**DUNLOP TIRE & RUBBER CORPORA-TION, Plaintiff-Appellant,**

v.

**INTERSTATE COMMERCE COMMIS-SION and United States of America, Defendant-Appellees,**

**Burlington Northern Railroad Company, the Denver & Rio Grande Western Railroad Company, Illinois Central Gulf Railroad Company, Missouri Pacific Railroad Company, St. Louis Southwestern Railway Company, Southern Pacific Transportation Company, Southern Railway Company, Union Pacific Railroad Company, the Western Pacific Railroad Company, and the Atchison, Topeka & Santa Fe Railway Company, Intervening Defendant-Appellees.**

**No. 333, Docket 83–6216.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1983.

Decided Dec. 22, 1983.

**350**

W.Q. Keenan, White Plains, N.Y. (Arsham & Keenan, White Plains, N.Y., of counsel), for plaintiff-appellant.

Sidney L. Strickland, Jr., Washington, D.C. (Salvatore R. Martoche, U.S. Atty., C. Donald O'Connor, Asst. U.S. Atty., Buffalo, N.Y., John Broadley, Gen. Counsel and Lawrence H. Richmond, Deputy Assoc. Gen. Counsel, Washington, D.C., on the brief), for defendant-appellees I.C.C. and U.S.

Louis P. Warchot, San Francisco, Cal. (Thormund A. Miller, Stuart E. Vaughn, Leland E. Butler, San Francisco, Cal., John H. Doeringer, Chicago, Ill., James R. Paschall, Norfolk, Va., James C. Stroo, Omaha, Neb., Donal L. Turkal, St. Paul, Minn. and John S. Walker, Denver, Colo., on the brief), for intervening defendant-appellees Bur-

lington Northern R. Co., The Denver & Rio Grande Western R. Co., Illinois Central Gulf R. Co., Missouri Pac. R. Co., St. Louis Southwestern Ry. Co., Southern Pac. Transp. Co., Southern Ry. Co., Union Pac. R. Co., The Western Pac. R. Co., and The Atchison, Topeka & Santa Fe Ry. Co.

Before MANSFIELD, VAN GRAAFEILAND, and HAYNSWORTH,[*] Circuit Judges.

PER CURIAM:

Dunlop Tire & Rubber Corporation appeals from a judgment of the United States District Court for the Western District of New York, Curtin, C.J., dismissing Dunlop's appeal from a decision of the Interstate Commerce Commission. We affirm.

On July 1, 1981, Dunlop filed a complaint with the ICC seeking a partial refund of rates paid the intervening defendant railroads for 790 shipments of rubber tires from Huntsville, Alabama to various cities in the western United States. In the complaint, as amended, Dunlop claimed that the railroads violated 49 U.S.C. § 10761 by charging $69,022.30 more than the lowest rate set in the applicable tariff. Focusing on the shipment of tires from Huntsville to Baumberg, California as prototypical of the routes of all the shipments, Dunlop asserts that the railroads' construction of a tariff route from Huntsville to Baumberg by way of Texarkana, Arkansas established a higher rate than that available by way of Little Rock, Arkansas.

In dismissing Dunlop's appeal from the ICC's decision, the district court made some reference to an arbitrary and capricious standard of review. That, of course, is not the proper standard in a case of this type. Tariff interpretation, like statutory interpretation, presents questions of law, freely reviewable by the district court. *See Coca-Cola Co. v. Atchison, T. & S.F. Ry. Co.,* 608 F.2d 213, 218–20 (5th Cir.1979), which also was cited by the district court. An ICC tariff interpretation, nevertheless, may be

---

* Senior Circuit Judge of the Fourth Circuit, sitting by designation.

accorded some deference by the reviewing court, because of ICC expertise and experience. *Id.* at 223; *Indiana Harbor Belt R.R. Co. v. United States,* 510 F.2d 644, 649–50 (7th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975). Our review of the tariff, conducted in accordance with the foregoing principles, satisfies us that the district court did not err in dismissing Dunlop's appeal.

■ The issues on this appeal can be described best in lay language. We are concerned with two possible rail routes from Huntsville to Baumberg. The more northerly route would be by way of Little Rock, and the southerly route would be by way of Texarkana. The tariff used by the railroads was based upon the southerly route, and was computed as follows:

| Huntsville to Texarkana | $1.38 per cwt. |
| Texarkana to Baumberg | $2.73 per cwt. |
| Huntsville to Baumberg | $4.11 per cwt. |

Other tariff provisions established possible rates of $1.17 per cwt. from Huntsville to Little Rock and $3.80 per cwt. from Little Rock to Baumberg. Appellant's counsel contends that Dunlop's rates should have been based on the northerly route but that the charge from Little Rock to Baumberg should have been no more than $2.73 per cwt., the same as the rate from Texarkana to Baumberg. He reaches this conclusion by hypothesizing a round-about shipment from Texarkana 143 miles northeast to Little Rock and thence west to Baumberg. This, counsel contends, would make Little Rock an intermediate point between Texarkana and Baumberg, and, by virtue of another tariff provision, Item 1500, the charge from Little Rock to Baumberg could be no greater than the charge from the "next point beyond", *i.e.,* Texarkana. Ergo, says counsel, his client was entitled to be charged no more than $1.17 per cwt., the rate from Huntsville to Little Rock, plus $2.73 per cwt., the hypothesized rate from Little Rock to Baumberg, or a total of $3.90.

The Commission correctly rejected counsel's hypothesis on the ground that the provisions of Item 1500 could not be used to determine a rate from Little Rock to Baumberg. Item 1500 specifically is made inapplicable where routing instructions in Item 14015 preclude shipments from Texarkana through Little Rock. Item 14015 lists points of origin in Column A and so-called "through points" in Columns B and C. Texarkana is in Column A and Little Rock is in a Column C grouping. For purposes of tariff rating, shipments from Column A points of origin cannot be routed through points listed in Column C, if, on a like shipment, the rate from the Column C point would be higher than the rate from the Column A point. Simply put, this provision prevents roundabout routing through higher rated territory. It would be quite illogical, therefore, to permit Item 1500 to be applied to such shipments. Explanatory addenda to both Item 1500 and Item 14015 accordingly provide that the provisions of Item 1500 do not apply in determining rates from points in Column C. Because, without such application, the $3.80 rate from Little Rock to Baumberg exceeds the $2.73 rate from Texarkana to Baumberg, tariff routing from Texarkana to Baumberg via Little Rock is foreclosed.

We find no merit in appellant's horse-before-the-cart argument that Item 1500 should be used to fix a Little Rock-Baumberg rate before reference is made to Column C of Item 14015. Such a use of Item 1500 would frustrate the very purpose for which the routing instructions in Item 14015 were designed.

The Commission correctly refused to follow its holding in *Great Lakes Carbon Corp. v. Southern Pac. Co.,* No. 34219 (1963), because there were no routing restrictions in that case similar to the ones that are present here. Although there is some similarity between the routing instructions and intermediate point regulations at issue in *Great Lakes Carbon* and those at issue here, the *Great Lakes'* provisions contain no controlling reference precluding application of the intermediate points rule where rate routing through the asserted intermediate points could not otherwise be established. In *Great Lakes,* the Commission found "no

restriction which would preclude the routing suggested in the complainant's reply statement." Here, the explanatory addenda specifically provide that the intermediate point regulations of Item 1500 "do not apply in determining the rate applicable in connection with the routing instructions published in [Item 14015] from points listed under Columns B or C."

The judgment of the district court is affirmed.